UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE MITCHAM,

    Plaintiff,

v.                                            CASE NO.: 8:13-CV-1645-T-17TGW

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

    Defendant.
_____/

ORDER

This cause is before the Court on:

Dkts. 24-26    Defendant's motion for summary judgment
Dkt. 27          Plaintiff's response in opposition
Dkt. 30          Defendant's reply

Plaintiff Michelle Mitcham filed this employment discrimination action against the University of South Florida Board of Trustees, alleging that she was subjected to disparate treatment based on her race and sex, a hostile work environment, and retaliation after engaging in statutorily-protected activity. The Court previously dismissed Plaintiff's claims pursuant to the Florida Civil Rights Act and 42 U.S.C. § 1981, leaving only her claims pursuant to Title VII of the Civil Rights Act of 1964. (Dkt. 10). For the reasons stated below, Defendant's motion for summary judgment is granted.

I.    **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "An issue of fact is 'material' if, under the applicable substantive

law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Harrison v. Culliver, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks omitted).

The moving party bears the initial responsibility to demonstrate the absence of a genuine dispute of material fact, and the Court must view all evidence and reasonable inferences in the light most favorable to the nonmoving party. Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party may not rely on evidence that is "merely colorable, or is not significantly probative of a disputed fact." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011) (internal quotation marks omitted).

## II. Factual Background

Plaintiff, an African-American female, claims disparate treatment and retaliation based on Defendant's decision to deny her application for tenure and promotion. Plaintiff also alleges that her coworkers created a hostile work environment. The relevant facts follow.

### A. Tenure and promotion decision

Plaintiff began working at the University of South Florida ("USF") in the fall of 2005 as an Assistant Professor in the College of Education, Department of Psychological and Social Foundations. (Dkt. 25-1, pp. 145, 171; Dkt. 5, par. 4). The rank of Assistant Professor is "tenure-earning," and each Assistant Professor has six years to demonstrate skills in teaching, research, and service. (Dkt. 25-4, Wilcox Aff.,

Case No. 8:13-CV-1645-T-17TGW

par. 7). At the end of the probationary period, the professor will complete a lengthy application for tenure and promotion to the rank of Associate Professor. (id., par. 8). As part of the application, three to six "external evaluators" review the application package and supply a short narrative with conclusions and recommendations. (Id., par. 10). The application is then evaluated by: (1) faculty members within the applicant's Department; (2) the Department Chair; (3) faculty members within the applicant's College; (4) the Dean of the College; (5) the Provost; and (6) the President of USF. If the President does not take action on the Provost's recommendation to deny tenure within a certain period, the Provost's recommendation becomes binding. (Id., par. 11). Tenure applicants do not compete for promotion, and the expectation is that all tenure-track professors will achieve tenure. (Id., pars. 12-13).

In September 2010, Plaintiff submitted her application for tenure and promotion. (Dkt. 25-2, p. 13). Plaintiff selected four external reviewers to review her application, and written evaluations from those reviewers were included in her application. (Dkt. 25-1, pp. 273-74; Dkt. 25-3, pp. 9-21). One of the reviewers, Dr. Courtland Lee from the University of Maryland, concluded that Plaintiff presented "at best, a marginal case for promotion and tenure," that she had "a somewhat confusing record of research and scholarship," and that she fell "somewhere in the middle of the pack of individuals of her scholarly generation." (Dkt. 25-3, pp. 20-21). A second reviewer, Dr. Cheryl Holcomb-McCoy of Johns Hopkins University, rated Plaintiff's scholarship, service, and professional standing as "adequate," concluding that Plaintiff made "moderate growth" in her research and scholarship. (Dkt. 25-3, pp. 18-19).

Plaintiff's application for tenure and promotion also included student evaluation ratings. (Dkt. 25-2, pp. 38-48). Between the fall of 2005 and summer of 2010, Plaintiff received lower student evaluation ratings than the average ratings for faculty in her Department and College. (Dkt. 25-2, pp. 44-48).

Case No. 8:13-CV-1645-T-17TGW

On October 21, 2010, the Department Faculty Committee for the Department of Psychological and Social Foundations voted to recommend that Plaintiff be denied tenure and promotion. The Committee report noted concerns about Plaintiff's external reviews and student evaluations. (Dkt. 25-4, Tan Aff., pars. 6-7 & Tab 1). On October 24, 2010, the Department Chair of the Department of Psychological and Social Foundations, Dr. Herb Exum, recommended that Plaintiff be denied tenure and promotion, based on his own review of her application package. (Dkt. 25-4, Exum Aff., pars. 8-9 & Tab 1). On November 9, 2010, the College Faculty Committee of the College of Education voted unanimously to recommend that Plaintiff be denied tenure and promotion, noting the existence of negative student evaluations and a less-than-adequate level of research productivity. The recommendation was based on an independent review of Plaintiff's application package. (Dkt. 25-4, Dorn Dec., pars. 8-9 & Tab 1). On December 10, 2010, the Dean of the College of Education, Dr. Colleen Kennedy, recommended that Plaintiff be denied tenure and promotion, based on her own evaluation of Plaintiff's application package. Dr. Kennedy's recommendation was based on the fact that Plaintiff's teaching had not improved systematically, the fact that Plaintiff did not have a sufficient body of research in top-tier journals, and Plaintiff's poor external evaluations. (Dkt. 25-4, Kennedy Dec., pars. 11-13).

On December 16, 2010, Plaintiff filed a complaint with USF's Diversity and Equal Opportunity (DEO) office, alleging discrimination based on race, color, and sex. (Dkt. 25-2, pp. 1-9). On January 18, 2011, Dr. Ralph Wilcox, the Provost and Executive Vice President of USF, made the final recommendation to deny Plaintiff tenure and promotion, based on an independent evaluation of Plaintiff's application package. (Dkt. 25-4, Wilcox Aff., pars. 17-19).

In March or April 2011, Plaintiff submitted a Charge of Discrimination to the Equal Employment Opportunity Commisssion (EEOC). (Dkt. 5, par. 15; Dkt. 25-1, p. 305; Dkt. 25-3, p. 113). By letter dated April 15, 2011, Provost Wilcox informed Plaintiff that her application for tenure and promotion was denied because her "record does not support a confident projection of sustained performance in teaching, research, and

Case No. 8:13-CV-1645-T-17TGW

service[.]" (Dkt. 25-4, Wilcox Aff., par. 19 & Tab 1). Dr. Wilcox stated that Plaintiff's employment with USF would conclude at the end of the 2011-2012 academic year. (Id.) Plaintiff ultimately resigned on September 9, 2011, after accepting a position with another university. (Dkt. 25-1, p. 304).

B.  Hostile work environment

Plaintiff also alleges that she was subjected to a hostile work environment by coworkers during her employment at USF. (Dkt. 27, pp. 15-16). In particular, Plaintiff maintains that Dr. Debra Osborn, who was serving as a coordinator in the Department, sent approximately three to six rude, dismissive, or condescending emails, over a period of two to three years. (Dkt. 25-1, pp. 198-200). For instance, in one email, Dr. Osborn stated that she was shocked that Plaintiff was not in class when it began, and that she was surprised that Plaintiff did not follow her directive to be in class. Plaintiff testified that this was odd because Dr. Osborn "wasn't my boss, she doesn't give directives." (Id., p. 201). In another email, Dr. Osborn stated that Plaintiff was required to teach a class with another professor, and that Plaintiff was not to sit in the back of the class reading a magazine. Other emails may have referenced teaching evaluations or teaching assignments. Dr. Osborn also spoke with Plaintiff verbally, regarding the same content discussed in the emails, approximately five times over a few years. (Id., pp. 202-4).

In addition to the emails and verbal statements, Plaintiff alleges that Dr. Osborn unfairly assigned classes to her. (Dkt. 27, p. 16). For instance, Dr. Osborn assigned the daytime section of "Theories of Counseling" to Dr. Osborn's friend, Dr. Jennifer Baggerly, while Plaintiff had to teach the same course in the evening. (Dkt. 25-1, pp. 179-80). Dr. Osborn told Plaintiff that she assigned the daytime section to Dr. Baggerly because Dr. Baggerly had a child, and because Dr. Baggerly had higher student evaluations—facts that Plaintiff concedes are accurate. (Dkt. 25-1, p. 193). In addition, Dr. Osborn assigned Plaintiff to teach "Multicultural Counseling." Plaintiff's concerns

5

Case No. 8:13-CV-1645-T-17TGW

about that assignment were that it would result in lower student evaluations, and that the "obvious racial minority person typically gets dumped on with that course," even though research shows that the most effective teacher for the course is a white male. (Id., pp. 181-82). Plaintiff testified that the assignment was racially-motivated because "there was no other reason why I kept getting that course." (Id., p. 182). Plaintiff received her highest student evaluations in that course, with the exception of only one other course. (Id., p. 284).

Dr. Osborn also represented the Counselor Education Program on Plaintiff's 2008 Annual Review Committee. Plaintiff alleges that this committee minimized her work, mentoring, and other contributions to the field, all of which negatively impacted her tenure application. (Dkt. 27-1, p. 6).

In addition to Dr. Osborn, Plaintiff alleges that she was harassed by Virginia Turner, a secretary in the Department, between the fall of 2007 and December 2010. In particular, Plaintiff testified that Ms. Turner called her a liar, yelled at her in front of students, and solicited negative student evaluations about Plaintiff. (Dkt. 25-1, pp. 211-12). Plaintiff notes that Defendant's own final investigative report stemming from her DEO complaint concluded that Ms. Turner had improperly gathered student evaluations outside the official process, although those evaluations were not included in Plaintiff's tenure application package. (Dkt. 27-1, p. 10). The report further concluded that Ms. Turner behaved in an inappropriate and unprofessional manner toward Plaintiff, warranting referral to Human Resources for further handling. (Id., p. 26, 28-29). Plaintiff testified that Ms. Turner's negative and toxic attitude affected everybody. (Dkt. 25-1, p. 59).

Finally, with respect to another colleague, Dr. Carlos Zalaquett, Plaintiff maintains that in September and October 2010, he twice addressed her in a rude and threatening manner about program tasks he had assigned to her. (Dkt. 27, p. 16). Plaintiff testified that Dr. Zalaquett yelled at her, "taking his fingers and pointing, kind of hitting his chest. He could have been—you know, I don't know if it was cultural, he was

6

Case No. 8:13-CV-1645-T-17TGW

hitting his chest and he was yelling at me." (Dkt. 25-1, p. 238). Plaintiff testified that Dr. Zalaquett scared everybody in the College. (id., p. 256).

## III.   Discussion

### A.   Timeliness and Equitable Tolling

In the motion for summary judgment, Defendant first argues that Plaintiff's claims are time-barred. A plaintiff must initiate a civil action within 90 days after the EEOC issues a Notice of Right to Sue letter. 42 U.S.C. § 2000e-5(f)(1); Law v. Hercules, Inc., 713 F.2d 691, 692-93 (11th Cir. 1983). If the date of receipt is in dispute, the Eleventh Circuit provides a presumption of three days for receipt by mail. Kerr v. McDonald's Corp., 427 F.3d 947, 953 n.9 (11th Cir. 2005) (citing Zillyette v. Capital One Fin. Corp., 179 F.3d 1337, 1342 (11th Cir. 1999)). Title VII's timely-filing requirements are subject to equitable tolling, for which the plaintiff bears the burden of proof. Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 660 (11th Cir. 1993); Jones v. Wynne, 266 Fed. Appx. 903, 906 (11th Cir. 2008).

In this case, the EEOC issued a Notice of Right to Sue on January 16, 2013. (Dkt. 5, par. 7 & Exh. 1). The Notice was mailed to Plaintiff at the post office box listed on her EEOC Charge of Discrimination. (See id.; Dkt. 25-3, p. 113). However, at the time the Notice of Right to Sue was mailed, Plaintiff was no longer using the post office box. (Dkt. 25-1, p. 312). At the end of May 2013 or the beginning of June 2013, Plaintiff contacted the EEOC to inquire about the status of her Charge, and informed the EEOC of her new mailing address. (Id., p. 326). On June 14, 2013, Plaintiff received the re-sent Notice of Right to Sue. (Id.). On June 24, 2013, Plaintiff filed the instant action. (Dkt. 1).

Accordingly, it is undisputed that Plaintiff did not initiate this action within 90 days from the issuance of the January 2013 Notice of Right to Sue letter. Nonetheless, Plaintiff maintains that there are factual issues that preclude summary judgment

Case No. 8:13-CV-1645-T-17TGW

because: she did not receive the first Notice; she took the initiative to contact the EEOC to inquire about her Charge; and she filed suit shortly after receiving the re-sent Notice. (Dkt. 27, p. 4).

The Court finds that Plaintiff has not established a material issue of fact. As Defendant argues, Plaintiff's failure to receive the January 2013 Notice of Right to Sue appears to be entirely due to the undisputed fact that Plaintiff did not inform the EEOC that she was no longer using the post office box. The Eleventh Circuit has observed:

> We believe it to be fair and reasonable for the plaintiff, as suggested by the trial judge, to assume the burden of advising the EEOC of address changes or to take other reasonable steps to ensure delivery of the notice to his current address. . . . If he did not contribute that minimum assistance to the process, he should not be heard to complain that he did not receive the letter delivered to the last address known to the EEOC, unless he can show . . . that other "fortuitous circumstances" or "events beyond his control" intervened, and that he "through no fault of his own" failed to receive the suit letter. Placement of this de minimis burden on the plaintiff also comports with the legislative purpose undergirding the ninety-day filing period, which "is a protection to the employer and is plainly there for its benefit alone."

Lewis v. Conners Steel Co., 673 F.2d 1240, 1243 (11th Cir. 1982) (internal citations omitted); see also Page v. Postmaster Gen. and Chief Exec. Officer of U.S. Postal Serv., 493 Fed. Appx. 994, 996 (11th Cir. 2012). In contrast to the cases on which she relies, Plaintiff identifies no circumstances or events that prevented her from receiving the first Notice—apart from her own failure to the supply the EEOC with her correct mailing address. As such, Plaintiff did not contribute the requisite "minimum assistance" to the process, and she may not be heard to complain that she did not timely receive the first Notice. Id.

In the alternative, Plaintiff argues that she is entitled to equitable tolling because the EEOC misled her by stating that she had 90 days from the date of the re-sent Notice in which to file suit. (Dkt. 27, p. 6). Specifically, Plaintiff relies on an email from an EEOC employee, which stated: "We initially sent your Notice of Rights to your PO Box 46326 on Jan 18, 2013, but it was returned to us as unclaimed. Please send us an

address and I will resend it. Once you actually receive it, you will have 90 days to file in court." (Dkt. 27-2, p. 1).[1]

The Court does not find that Plaintiff has established entitlement to equitable tolling based on the email, as Plaintiff fails to demonstrate that her delay in filing was due to being misled by the EEOC. The email was dated June 13, 2013, well after the 90-day filing period had already expired. Thus, even though the EEOC employee stated that Plaintiff would have 90 days to file her suit, Plaintiff's reliance on that statement could not have prevented her from timely filing her suit.

Accordingly, Defendant's motion for summary judgment is due to be granted because Plaintiff's claims are time-barred. In the alternative, the Court finds that Plaintiff's claims fail on the merits, for the reasons discussed below.

## B. Disparate treatment

A plaintiff may prove that an employer discriminated based on a protected characteristic by offering direct or circumstantial evidence of discrimination. In cases involving circumstantial evidence, as here, the Court employs the familiar McDonnell Douglas burden-shifting framework. To establish a prima facie case of disparate treatment, a plaintiff may demonstrate that: (1) she is a member of a protected class; (2) she was subject to an adverse employment action; and (3) similarly-situated employees were treated more favorably. The burden then shifts to the employer to introduce evidence of a non-discriminatory reason for the challenged employment action. Once the employer articulates such a reason, the burden shifts back to the plaintiff to show that the asserted reason is a pretext for an unlawful motive. Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010).

---

[1] Defendant objects to this email as both unauthenticated and as inadmissible hearsay. (Dkt. 30, p. 6, n.2). For the purposes of this motion, the Court considers the email as properly authenticated and admissible.

Case No. 8:13-CV-1645-T-17TGW

A plaintiff will always survive summary judgment if the record "presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (internal quotation marks omitted). The McDonnell Douglas framework is only a tool, and the ultimate question is "not whether the plaintiff established a prima facie case or demonstrated pretext, but whether the defendant intentionally discriminated against the plaintiff." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987) (internal quotation marks omitted).

The Court will assume, arguendo, that Plaintiff has established a prima facie case of disparate treatment, based on the denial of her application for tenure and promotion. See Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1215 (11th Cir. 2008) (noting that the denial of a promotion can be an adverse action). In turn, Defendant has identified a non-discriminatory reason for its denial of Plaintiff's application for tenure and promotion. Specifically, as Provost Wilcox explained in his April 15, 2011 letter, Plaintiff's application was denied because her record did not support a confident projection of sustained performance in teaching, research, and service.

Plaintiff maintains that Defendant's stated reason is a pretext for discriminatory animus. In order to avoid summary judgment, a plaintiff must present "significant probative evidence" on the issue of pretext. Mayfield v. Patterson Plumbing Co., 101 F.3d 1371, 1376 (11th Cir. 1996) (internal quotation marks omitted). A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989) (internal quotation marks omitted). For instance, a plaintiff may demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Jackson v. State of Ala.

Case No. 8:13-CV-1645-T-17TGW

State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks omitted).

Here, Plaintiff argues that Defendant's proffered reason is undermined by statements in the DEO final investigative report. (Dkt. 27, pp. 13-14). In particular, Plaintiff relies on two portions of the report: (1) the conclusion that the Department secretary, Ms. Turner, behaved inappropriately and unprofessionally toward Plaintiff, warranting referral to Human Resources for furthering handling, and improperly gathered student evaluations outside the official process; and (2) the conclusion that allegations with respect to another professor, Dr. Sue Street, were filed outside the 120-day deadline. (Dkt. 27-1, pp. 26, 28-29). However, Plaintiff provides no evidence indicating that Ms. Turner or Dr. Street were involved in, or otherwise impacted, the decisionmaking process with respect to Plaintiff's application for tenure and promotion. See Rowell v. BellSouth Corp., 433 F.3d 794, 801-02 (11th Cir. 2005) (where the plaintiff argued that the "corporate culture" was conducive to age discrimination, holding that statements by non-decisionmakers could not demonstrate discriminatory intent). Indeed, according to the DEO report cited by Plaintiff, the negative student evaluations gathered by Ms. Turner were not included in Plaintiff's tenure application. (Dkt. 27-1, p. 10).

Moreover, Plaintiff testified that the Provost is able to make an independent decision with respect to tenure applications—which Provost Wilcox has averred that he did—and that she does not believe that Provost Wilcox or Dean Kennedy discriminated against her. (Dkt. 25-1, pp. 169, 233, 303). As a result, Defendant correctly argues that there is no evidence that any lower-level employees effected their discriminatory animus under a "cat's paw" theory—a point that Plaintiff does not contest in her response. Crawford v. Carroll, 529 F.3d 961, 979 n.21 (11th Cir. 2008) (explaining that, under a cat's paw theory, "a non-decisionmaking employee's discriminatory animus may be imputed to a neutral decisionmaker when the decisionmaker has not independently investigated allegations of misconduct").

11

Case No. 8:13-CV-1645-T-17TGW

As a final matter, the evidence does not otherwise suggest that Defendant's tenure decision was based on an impermissible motive. As Defendant notes, Provost Wilcox's decision was consistent with the ratings by two of Plaintiff's own external reviewers, who characterized her record as "marginal" or "adequate." Provost Wilcox's determination was also consistent with Plaintiff's lower-than-average student evaluations. Moreover, while Plaintiff did not receive tenure, another African-American female professor in Plaintiff's Department did achieve tenure the same year that Plaintiff was considered. (Dkt. 25-1, pp. 175-76; Dkt. 25-4, Wilcox Aff., par. 20).

"Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions," and a plaintiff cannot succeed in establishing pretext by simply quarreling with the wisdom of an employer's decision. Chapman v. Al Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (internal quotation marks and alteration omitted). Indeed, "[t]he employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). In this case, Plaintiff has not identified evidence suggesting that Defendant denied Plaintiff's application for tenure and promotion based on a discriminatory reason. Defendant's motion for summary judgment is therefore **granted** as to Plaintiff's claim for disparate treatment.

### C. Hostile work environment

"A hostile work environment claim under Title VII is established upon proof that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (internal quotation marks omitted). To prevail on a claim for hostile work environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; (3) the harassment was

12

Case No. 8:13-CV-1645-T-17TGW

based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and 5) the employer is responsible for such environment under either a theory of vicarious or of direct liability. id.

The "severe and pervasive" prong contains both an objective and a subjective component. In evaluating the objective severity of the harassment, courts consider, "among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. at 1276. Courts must "examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999). However, "Title VII is a not a federal civility code," and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. at 1245 (internal quotation marks omitted); Faragher v. City of Boca Raton, 524 U.S. 775, 778, 118 S.Ct. 2275, 2283 (1998) (internal quotation marks omitted).

Plaintiff asserts that her hostile work environment claim is based on the following: (1) Dr. Osborn minimized Plaintiff's accomplishments in the 2008 annual review, which ultimately impacted Plaintiff's tenure application; (2) Dr. Osborn gave Plaintiff unfair teaching assignments; (3) Dr. Osborn sent rude and condescending emails to Plaintiff; (4) Ms. Turner behaved in an unprofessional and inappropriate manner toward Plaintiff and improperly solicited negative student evaluations; and (5) Dr. Zalaquett twice addressed Plaintiff in a rude and threatening manner. (Dkt. 27, pp. 15-16).

Case No. 8:13-CV-1645-T-17TGW

Defendant argues that these alleged incidents of harassment are not based on Plaintiff's race or gender, as required to sustain a hostile work environment claim. The Court agrees. It is well-established that Title VII "does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010) (internal quotation marks omitted). Defendant correctly maintains that Plaintiff has identified no verbal or written statements that contained race- or gender-based content. Indeed, it appears that the statements by Dr. Osborn and Dr. Zalaquett related entirely to Plaintiff's teaching or other program tasks. Nor is there any indication that Plaintiff's teaching assignments were based on race or gender, or that Ms. Turner solicited negative student evaluations based on Plaintiff's race or gender. Indeed, Plaintiff testified that Ms. Turner's negative and toxic behavior not only affected her, it affected everybody. Likewise, Plaintiff testified that Dr. Zalaquett's actions might have been "cultural" and that everyone avoided him. Cf. Succar v. Dade Cnty. Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (observing that personal animosity, or a personal feud, is not the equivalent of sex discrimination).

In her response in opposition, Plaintiff argues that the alleged harassing incidents are based on race because Dr. Sue Street called her "Peanut Butter" between 2005 and 2006, in reference to her skin color.[2] Plaintiff also conclusorily asserts that a

---

[2] Plaintiff does not appear to base her hostile work environment claim on Dr. Street's statements (see Dkt. 27, pp, 15-16)—likely because, as Defendant argues, any such claim would be time-barred. See E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002) (stating that an EEOC charge must be filed within 300 days of the last discriminatory act). Plaintiff also fails to explain how Dr. Street's statements are sufficiently connected to later actions by other employees, so as to invoke the "continuing violation doctrine." See Roberts v. Gadsden Mem'l Hosp., 835 F.2d 793, 799-801 (11th Cir. 1988). In any event, even assuming that Plaintiff is premising her claim on these comments, and that the comments are race-based, there is no indication that the comments otherwise amount to the requisite severe or pervasive conduct. At best, Dr. Street's statements are "mere offensive utterances," and Plaintiff cites no evidence pertaining to their frequency or the degree of interference with her job.

14

Case No. 8:13-CV-1645-T-17TGW

"female being threatened and condescended to by a male (as in the case of Dr. Zalaquett) is certainly gender-based." (Dkt. 27, p. 16). Plaintiff's arguments are not persuasive. Dr. Street's purported race-based comments in 2005 and 2006 have no apparent nexus to the conduct of Dr. Osborn, Dr. Zalaquett, or Ms. Turner, and they are therefore not probative as to whether their conduct was race- or gender-based. In addition, Plaintiff may not attribute a discriminatory motive to Dr. Zalaquett simply based on the fact that she and Dr. Zalaquett are of opposite genders.

Defendant's motion for summary judgment is therefore **granted** as to Plaintiff's hostile work environment claim.

**D. Retaliation**

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) she engaged in statutorily protected expression; (2) she suffered a materially adverse employment action; and (3) there was a causal connection between the adverse action and the protected expression. Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013). "An action is materially adverse if it might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1258-59 (11th Cir. 2012) (internal quotation marks omitted). With respect to the causal connection requirement, a plaintiff must establish that her protected activity was a but-for cause of the alleged adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. ___, ___, 133 S.Ct. 2517, 2533 (2013).

Defendant first argues that, to the extent Plaintiff bases her retaliation claim on harassment, such as not being invited to faculty meetings and faculty members not speaking to her, these events do not constitute the requisite "materially-adverse action." In her response in opposition, Plaintiff does not challenge that point, instead arguing

Case No. 8:13-CV-1645-T-17TGW

that the denial of her application for tenure and promotion is the pertinent materially-adverse action.[3] (Dkt. 27, p. 17).

However, Plaintiff fails to address the other components of her retaliation prima facie case, nor does she address the remaining prongs of the McDonnell Douglas burden-shifting framework. Defendant argues that before Plaintiff filed her DEO complaint on December 18, 2010, she had already been recommended for denial of tenure by the Department Faculty Committee, the Department Chair, the College Faculty Committee, and Dean Kennedy. In addition, Plaintiff testified that she did not know if Provost Wilcox, the final decisionmaker, was aware of her DEO or EEOC complaints, or if he took action against her for retaliatory reasons. (Dkt. 25-1, p. 254). Accordingly, Plaintiff has established, at best, a tenuous causal link between her protected activity and the adverse employment action.

Additionally, even if Plaintiff has established a prima facie case of retaliation, Defendant has produced a non-discriminatory reason for the tenure decision: Plaintiff's lack of sustained performance in teaching, research, and service. In response, Plaintiff fails to counter with any evidence of pretext beyond the evidence discussed above, in connection with Plaintiff's disparate treatment claim. As already explained, that evidence does not suffice to call into question Defendant's stated reason for the tenure decision, and there is no additional evidence suggesting that Defendant acted with a

---

[3] Plaintiff does appear to argue, in passing, that she was constructively discharged based on the alleged harassment she suffered after filing her EEOC complaint. (Dkt. 27, p. 14). "Establishing a constructive discharge claim is a more onerous task than establishing a hostile work environment claim." Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009). A plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prevail on a hostile work environment claim. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231-32 (11th Cir. 2001). Assuming that a constructive discharge claim is properly before the Court, Plaintiff does not specifically identify the incidents supporting such a claim, let alone establish that those incidents were sufficiently severe or pervasive. Gowski v. Peake, 682 F.3d 1299, 1311 (11th Cir. 2012) (recognizing retaliatory hostile work environment claim and applying severe and pervasive standard).

Case No. 8:13-CV-1645-T-17TGW

retaliatory animus.   Defendant's motion for summary judgment is therefore **granted** as to Plaintiff's retaliation claim.

Accordingly, it is **ORDERED** that:
a. Defendant's motion for summary judgment (Dkt. 24) is granted;
b. The Clerk is directed to enter judgment in favor of Defendant and to close this case.

**DONE AND ORDERED**, in Chambers, in Tampa, Florida on this 3rd day of December, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record