UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHELLE MITCHAM,

      Plaintiff,

v.                             CASE No. 8:13-CV-1645-T-17TGW

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

      Defendant.

---

## REPORT AND RECOMMENDATION

      The defendant, who prevailed on the plaintiff's claims of race and gender discrimination, hostile work environment, and retaliation, seeks an award of its attorneys' fees and sanctions (Docs. 33, 35).[1] The defendant also requests reimbursement for its costs (Doc. 34). For the following reasons, I recommend that the defendant's motion for attorneys' fees be granted to the extent that the defendant be awarded attorneys' fees from, and after, the date of the plaintiff's deposition. I further recommend that the motion for costs be granted and the motion for sanctions be denied.

---

[1] This Report and Recommendation addresses only whether the defendant is entitled to attorneys' fees and sanctions.

I.

The plaintiff, an African-American female, worked as an Assistant Professor in the Department of Psychological and Social Foundations in the College of Education at the University of South Florida ("the defendant") from fall 2005 to September 2011 (Doc. 25-1, p. 9; Doc. 31, p. 2).[2] The defendant is a state university (Doc. 24, p. 2).

In September 2010, the plaintiff submitted an application for tenure and promotion (id., p. 4).[3] The application included written evaluations from four external reviewers, who were selected by the plaintiff (id.). Dr. Courtland Lee, a reviewer from the University of Maryland, stated that the plaintiff "presents a somewhat confusing record of research and scholarship," she "fall[s] somewhere in the middle of the pack of individuals of her scholarly generation," and she has "at best, a marginal case for promotion and tenure" (Doc. 25-3, pp. 20-21). Another external reviewer, Dr. Cheryl Holcomb-McCoy from Johns Hopkins University, indicated that the plaintiff "has made moderate growth in her research and scholarship," and the

---

[2] The page numbers refer to the page numbers assigned by the CM/ECF system.

[3] The tenure and promotion process is described in detail in the Order granting the defendant's motion for summary judgment (Doc. 31).

plaintiff's scholarship, service, and professional standing are adequate (id., pp. 18-19).

The plaintiff's application for tenure and promotion also included student evaluations (Doc. 24, p. 5). Between fall 2005 and summer 2010, the plaintiff's evaluations were lower than the average ratings for faculty members in the College of Education and her department (id.).

The Department Faculty Committee for the Department of Psychological and Social Foundations reviewed the plaintiff's application for promotion and tenure. On October 21, 2010, the majority of the department committee voted to recommend that the plaintiff be denied tenure and promotion (id., p. 6; Doc. 25-4, p. 29, ¶6, pp. 32-37).

Dierdre Cobb-Roberts and two other members of the department committee "requested the Department of Psychological and Social Foundations to investigate the irregularities of the student evaluation collection procedure" for the plaintiff (Doc. 27-4, p. 2). Cobb-Roberts co-authored a minority report which disagreed with the department committee's denial vote, and she signed that report "as [her] statement attesting to the fact that [she] was uncomfortable voting on [the plaintiff's] tenure and promotion portfolio until an investigation into the irregular student evaluation collection procedure had been investigated" (id.).

Following his own independent review of the plaintiff's application, Dr. Herb Exum, the department chair, recommended that the plaintiff be denied tenure and promotion (Doc. 25-4, p. 40, ¶¶8-9, pp. 43-46). The College Review Committee for the College of Education also independently reviewed the plaintiff's application, and, in November 2010, it recommended that the plaintiff's application be denied (id., p. 20, ¶¶6, 8, pp. 23-26).

Thereafter, Dr. Colleen Kennedy, Dean of the College of Education, reviewed the plaintiff's application package (id., p. 11, ¶9). She recommended to Dr. Ralph Wilcox, the Provost and Executive Vice President, that the plaintiff's application for tenure and promotion be denied (id., p.11, ¶11).

In January 2011, Wilcox made the final recommendation to the defendant's president, Dr. Judy Genshaft, that the plaintiff's application for tenure and promotion should be denied (Doc. 24, p. 7; Doc. 25-4, p. 5, ¶17). Wilcox's recommendation was based on his independent review of the plaintiff's application.

Subsequently, in a letter dated April 15, 2011, Wilcox notified the plaintiff that her request for tenure and promotion had been denied. In this connection, Wilcox explained that the plaintiff's "record does not support

-4-

a confident projection of sustained performance in teaching, research, and service in [her] discipline at the University of South Florida" (Doc. 25-4, p. 8).   Wilcox also informed the plaintiff that her employment with the defendant would terminate at the conclusion of the 2011-12 academic year (id.).

At the same time the plaintiff applied for tenure and promotion, Dr. Wilma Henry, an African-American female in the plaintiff's department, also applied for tenure and promotion (id., p. 11, ¶7).  Henry's application was granted.

In addition to not receiving tenure and promotion, the plaintiff alleged that she was subjected to a hostile work environment by her co-workers, Dr. Debra Osborn, Virginia Turner, and Dr. Carlos Zalaquett (see Doc. 31, pp. 5-7).  For example, the plaintiff asserted that Dr. Zalaquett discriminated against her by yelling and being rude and threatening.

In 2011, the plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (Doc. 5, ¶15; Doc. 25-3, p. 113).  The Charge of Discrimination form listed the plaintiff's address as P.O. Box 46326, Tampa, FL 33646 (Doc. 25-3, p. 113).

On January 16, 2013, the EEOC mailed a Notice of Right to Sue to the plaintiff at the address listed on the Charge of Discrimination form

(Doc. 5, ¶7; Doc. 5-1; Doc. 25-3, p. 116).  At that time, however, the plaintiff was no longer using P.O. Box 46326 (Doc. 25-1, p. 84).

Subsequently, in May or June 2013, the plaintiff contacted the EEOC to check on the status of her Charge of Discrimination, and, at that point, she notified the EEOC of her new mailing address (id., p. 85).  In an email to the plaintiff dated June 13, 2013, a representative from the EEOC said (Doc. 27-2, p. 1):

> A determination was made on your case in January. We initially sent your Notice of Rights to your PO Box 46326 on Jan 18, 2013 but it was returned to us as unclaimed.  Please send us an address and I will resend it.  Once you actually receive it, you will have 90 days to file in court.

The next day, the plaintiff received the re-sent Notice of Right to Sue from the EEOC (Doc. 5, ¶7; Doc. 25-1, p. 85).

On June 24, 2013, the plaintiff brought this lawsuit against the defendant.  The defendant subsequently filed a motion to dismiss counts IV and V and partially dismiss counts I, II, and III of the plaintiff's amended complaint (Doc. 8).  In August 2013, United States District Judge Elizabeth A. Kovachevich entered an Order granting the motion to dismiss the plaintiff's claims pursuant to the Florida Civil Rights Act and 42 U.S.C.

1981, leaving only the plaintiff's claims under Title VII of the Civil Rights Act of 1964 (Doc. 10).

Thereafter, on June 13, 2014, the plaintiff appeared for her deposition in this case. The plaintiff denied any claim that Kennedy or Exum (an African-American male) discriminated against her on the basis of race; she did not believe that Genshaft and Kennedy (both female) or Wilcox discriminated against her on the basis of her gender; and she did not know if Genshaft, Kennedy, or Wilcox retaliated against her because she filed a complaint of discrimination (Doc. 25-1, pp. 11-12, 45, 57). The plaintiff acknowledged that the provost can make an independent decision regarding promotion and tenure (id., p. 75), and she knew that Henry's application for tenure and promotion was approved (id., pp. 14-15). Finally, with respect to Zalaquett, the plaintiff said that "he scared everybody" in the College of Education (id., p. 59).

In September 2014, the defendant moved for summary judgment on the plaintiff's remaining claims (Doc. 24). Judge Kovachevich granted the defendant's motion on December 3, 2014 (Doc. 31).

The defendant now seeks an award of its attorneys' fees, asserting that the plaintiff and her counsel knew or should have known that the plaintiff's Title VII claims were time-barred, and, following the plaintiff's

deposition, the plaintiff and her counsel knew or should have known that those claims were without basis in fact or law (Doc. 33). The defendant also moves for sanctions, arguing that "[i]f Plaintiff's counsel had conducted a reasonable inquiry into Plaintiff's allegations and claims prior to initiating this action, such inquiry would have revealed that Plaintiff's claims are both time-barred in their entirety and meritless" (Doc. 35, p. 2). The plaintiff filed a single response in opposition to the motions (Doc. 36). The motions were referred to me for a hearing, if necessary, and for a report and recommendation (Doc. 38). The defendant also filed a motion for taxation of costs with a verified bill of costs (Doc. 34). The plaintiff has submitted a memorandum in opposition, objecting to certain transcript and copying expenses (Doc. 37). Oral argument on the motions for attorneys' fees, sanctions, and costs was held before me on July 2, 2015.

## II.

The defendant contends that it is entitled to an award of attorneys' fees because the plaintiff and her attorney knew or should have known that the plaintiff's claims were time-barred and meritless. The plaintiff, on the other hand, asserts that she made reasonable arguments regarding the timeliness of the lawsuit and the defendant's failure to grant her application for tenure and promotion.

Section 2000e-5(k) of Title 42, U.S.C., provides that, in a Title VII action, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee ... as part of the costs."[4]  Although under this provision a prevailing plaintiff is generally awarded attorneys' fees as a matter of course, policy considerations call for a different standard concerning an award of attorneys' fees to a defendant in a civil rights action.[5] Consequently, prevailing defendants seeking an award of fees must establish that the plaintiff's action was "frivolous, unreasonable, or without foundation," even though not brought in bad faith. Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 421 (1978).

The Supreme Court has also made clear that a litigant's duty to avoid frivolous litigation is a continuing obligation. Id. at 422; Turner v. Sungard Business Systems, Inc., 91 F.3d 1418, 1423 (11th Cir. 1996).

---

[4]As indicated, the defendant also seeks attorneys' fees under 28 U.S.C. 1927 and sanctions pursuant to Rule 11, Fed.R.Civ.P. The defendant seems to recognize that Section 1927 and Rule 11 involve a showing of bad faith. Under the circumstances of this case, I am not prepared to say that plaintiff's counsel acted in bad faith, so those provisions do not support an award of fees.

[5]Thus, awarding attorneys' fees to a prevailing plaintiff serves to vindicate congressional policy and punish a violator of federal law. Christiansburg Garment Co. v. Equal Employment Opportunity Commission, 434 U.S. 412, 418 (1978). An award of attorneys' fees to a prevailing defendant deters frivolous lawsuits and protects "defendants from burdensome litigation having no legal or factual basis." Id. at 420.

Therefore, advocacy of a claim after it is clearly no longer tenable may subject the plaintiff to attorneys' fees even though the complaint was not initially frivolous. Christiansburg Garment Co. v. Equal Employment Opportunity Commission, supra, 434 U.S. at 422.

In determining whether a lawsuit is frivolous, "a district court must focus on the question whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful." Sullivan v. School Bd. of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985) (citation omitted); Christiansburg Garment Co. v. Equal Employment Opportunity Commission, supra, 434 U.S. at 421-22 (simply because the plaintiff did not ultimately prevail does not compel the conclusion that the action was unreasonable). In the Eleventh Circuit, factors considered important in determining whether a claim is frivolous include: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." Sullivan v. School Bd. of Pinellas County, supra, 773 F.2d at 1189. These are, however, "general guidelines only, not hard and fast rules." Id. "Determinations regarding frivolity are to be made on a case-by-case basis." Id.

The defendant contends that "all three of the determinative factors that the Eleventh Circuit looks for when considering whether to award attorneys' fees to a prevailing defendant have been met" (Doc. 33, p. 7). Thus, the defendant states that the matter was decided on a motion for summary judgment, and "it did not offer to pay Plaintiff any money to settle her claims, nor did it offer to reinstate Plaintiff to her former position" (id.). The defendant further argues that, in granting the motion for summary judgment, the district court "found that Plaintiff's claims were both time barred in their entirety and without merit" (id.).

Importantly, the district court did not conclusively decide whether the plaintiff established a prima facie case. Rather, the court merely assumed arguendo that a prima facie case had been established for the purposes of summary judgment. Such a finding is an insufficient basis upon which to conclude that the defendant is entitled to an award of attorneys' fees.

Furthermore, it cannot be said that the plaintiff's case was frivolous from the outset of the litigation because it was untimely. Thus, as indicated, the record contains an email to the plaintiff from an EEOC employee, which states (Doc. 27-2, p. 1):

> A determination was made on your case in January.
> We initially sent your Notice of Rights to your PO
> Box 46326 on Jan 18, 2013 but it was returned to

> us as unclaimed.  Please send us an address and I
> will resend it.  Once you actually receive it, you
> will have 90 days to file in court.

Although the district court ultimately found that the plaintiff's claims were time-barred, the EEOC email provided some basis for the plaintiff to argue that her lawsuit was timely.  Accordingly, the fact that the plaintiff's claims were found to be time-barred should not be used as a basis for an award of attorneys' fees to the defendant.

On the other hand, the defendant persuasively argues that the plaintiff and her attorney knew or should have known that the plaintiff's claims were meritless following the plaintiff's deposition (Doc. 33, p. 1).  The plaintiff acknowledged that Provost Wilcox makes an independent decision regarding applications for promotion and tenure (Doc. 25-1, p. 75).  She does not identify any evidence indicating that Wilcox discriminated against her in his tenure decision, as the court pointed out in its ruling (Doc. 31, pp. 11-12).  Moreover, the plaintiff denied any claim that Kennedy or Exum discriminated against her on the basis of race; she did not believe that Genshaft, Kennedy, or Wilcox discriminated against her due to gender; and she did not know if Genshaft, Kennedy, or Wilcox retaliated against her following her complaint of discrimination (Doc. 25-1, pp. 11-12, 45, 57).

Furthermore, the plaintiff admitted that Henry, an African-American female in her department, applied for tenure at the same time she did and that application was granted (id., pp. 14-15). That acknowledgment refutes the plaintiff's assertion of a corporate climate of bias (Doc. 27, p. 10).

Notably, in her response to the defendant's motion for summary judgment, the plaintiff did not even argue that any of the evaluating administrators engaged in discrimination. Rather, the plaintiff's theory was: "Put simply; Plaintiff's position is that where; as here, the process was so demonstrably flawed, then it follows that the product of such process is likely to also be flawed — especially where; as here, something so fundamental as tenure and promotion is concerned" (id., p. 3). Thus, the plaintiff's theory is that the tenure review process was flawed. That theory does not support a claim under the employment discrimination statutes on which the plaintiff based her lawsuit. Consequently, it is not surprising that the plaintiff makes no meaningful attempt in her opposition to the defendant's summary judgment motion to show that Provost Wilcox or any of the other evaluating administrators were acting with a discriminatory or retaliatory animus.

The plaintiff, rather, seeks to rely upon the defendant's investigative report into the plaintiff's charge of discrimination. However, that report concludes that "there is insufficient information to support the

-13-

allegation that Mitcham was denied tenure because of her race and/or gender"
(Doc. 27-1, p. 26). Thus, that report, which was prepared by an outside
investigator, does not support the plaintiff's case — or even make the claim
non-frivolous.

The plaintiff contends that Virginia (Sandy) Turner, an
administrative assistant, improperly obtained negative student evaluations and
was biased against her (Doc. 27, p. 3). I carefully considered this contention
to see whether it presents a viable argument under some form of "cat's paw"
theory. However, this court expressly stated that, "according to the DEO
report cited by Plaintiff, the negative student evaluations gathered by Ms.
Turner were not included in Plaintiff's tenure application" (Doc. 31, p. 11).
Therefore, no non-frivolous argument can be based on Turner's conduct.
And, notably, the plaintiff relies on that conduct rather than on any
discriminatory actions by Provost Wilcox or any other evaluating
administrators.

In light of the plaintiff's deposition testimony, which
acknowledged a lack of evidence of a discriminatory or retaliatory animus on
the part of Provost Wilcox or other evaluating administrators, there was no
justification from that point on for pursuing the plaintiff's claims.

Consequently, I recommend that attorneys' fees be awarded to the defendant from June 13, 2014, the date of the plaintiff's deposition.

III.

The defendant also seeks recovery of costs totaling $4,006.35 (Doc. 34). These costs comprise $3,701.95 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case"; $264.40 for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; and a $40 fee "for service of summons and subpoena" (id., p. 4). The plaintiff objects to reimbursement for certain transcript and copying expenses (Doc. 37).

The plaintiff first objects to reimbursement for the original and one copy of the plaintiff's deposition transcript, and requests that the defendant's costs be reduced by the charge for the copy (id., p. 2). In connection with its motion, the defendant submitted a court reporter invoice for "transcript original & one copy of deposition" (Doc. 34, p. 9).[6] The invoice reflects $2,987.45 in transcript fees (401 pages at $7.45 per page) and $14.50 in shipping charges, for a total of $3,001.95. At the hearing, defense

---

[6]The defendant also submitted a court reporter invoice in the amount of $700 (Doc. 34, p. 8). Defense counsel believed that this invoice is for the court reporter's appearance fee.

counsel explained that the plaintiff's deposition transcript was over 300 pages and included exhibits; he therefore believed that the invoice charge for 401 pages covers only the original transcript, rather than the original and a copy. Defense counsel's explanation seems reasonable, and the plaintiff has failed to make an adequate argument to the contrary.  Accordingly, the defendant should be reimbursed for these costs.

In a cursory manner, the plaintiff also challenges reimbursement for the cost of obtaining records from the EEOC "as not specifically being 'necessary for use in defending the case'" (Doc. 37, p. 2).  However, defense counsel explained at the hearing that these records were necessary to explore the time-barred defense.  Therefore, I recommend that the defendant be awarded these costs.

IV.

For the foregoing reasons, I recommend that Defendant's Motion for Award of Attorneys' Fees (Doc. 33) be granted to the extent that the defendant be awarded attorneys' fees from, and after, June 13, 2014, the date of the plaintiff's deposition.[7]  I further recommend that Defendant's Motion to Tax Costs with Verified Bill of Costs (Doc. 34) be granted and the

---

[7]If this recommendation is accepted, the parties should be directed to attempt to resolve the amount of attorneys' fees, failing which the defendant should file a detailed itemization of its claim for fees, with the plaintiff filing any responsive objections.

defendant be awarded costs totaling $4,006.35.  Finally, I recommend that

Defendant's Motion for Sanctions (Doc. 35) be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: AUGUST _14_, 2015

NOTICE TO PARTIES

Failure to file written objections to the proposed findings and

recommendations contained in this report within fourteen days from the date

of its service shall bar an aggrieved party from attacking the factual findings

on appeal.  28 U.S.C. 636(b)(1).